BROOM, Justice,
for the Court.
Cancellation of a contract and whether such cancellation in writing bars recovery of amounts allegedly owed prior thereto are featured in this appeal from the Circuit Court of Jasper County. Mack Ravenhorst (plaintiff) appellee, sued Anvil Mineral Mining Corporation, appellant, for sums the plaintiff claimed were due him for services he rendered as a consultant to Anvil. A $15,275 jury verdict and judgment were rendered for Ravenhorst. Anvil argues here on appeal that its requested peremptory instruction should have been granted without the case going to the jury because the contract upon which the plaintiff sued
had been cancelled and released by virtue of the execution of the instrument . . . dated May 23,1977 at the specific request of the appellee.
We find Anvil’s argument to be meritorious, and must reverse.
Plaintiff Ravenhorst was a founder and former president of Anvil which made and shipped fertilizer minerals. On account of ill health, in May 1976 he ceased his duties as president and on May 28, 1976, entered into a contract with Anvil whereby he would serve as Anvil’s consultant for five years at a fee calculated on each ton of minerals. The consultant type contract was *143 effective as of May 1,1976, and a year later on May 17, 1977, Ravenhorst asked by way of a letter to the corporation’s president, to be released from his consultant duties under the contract because of health problems. In the letter, Ravenhorst requested that he be paid any compensation which had accrued under the contract, if the corporation decided that the agreement should be terminated. However, the letter did not contain language that the requested termination was conditioned upon payment of any accrued compensation to Ravenhorst.
On May 23, 1977, Ravenhorst and Anvil executed a one-page document headed “Cancellation and Release of Contract” as follows:
CANCELLATION AND RELEASE OF CONTRACT
WHEREAS, under date of June 28, 1976, Anvil Mineral Mining Corporation and Mack Ravenhorst entered into a contract whereby the said Mack Ravenhorst was to perform certain services as a consultant for and on behalf of Anvil Mineral Mining Corporation, a xerox copy of said contract being attached hereto and made a part hereof; and
WHEREAS, the said parties have now mutually agreed to cancel said contract in its entirety, all terms and conditions provided for therein having been performed to date:
NOW, THEREFORE, in consideration of the premises, it is hereby agreed and understood that the aforesaid contract entered into by and between the parties hereto under date of June 28,1976 be and the same is hereby canceled, released and held for naught.
Ravenhorst testified that at the signing of the release, Anvil president M. M. Kalish orally told him he would “have my money within a few days.” Testifying further, Ravenhorst stated this money was his so-called “commission” under the contract for the period January through April, 1977, but Kalish denied making such an oral promise. According to Ravenhorst, he never received the commission and therefore brought suit to obtain the money.
Ravenhorst’s son, Vernon, who was Anvil’s plant supervisor during the time in question, testified that he examined the tonnages sold by Anvil during the months of January through April 1977, multiplied it by the contract prices and determined that Anvil owed his father $15,275.52 for the four months. Vernon, who was also present at the signing of the release, testified that Kalish said Ravenhorst would “be getting a check in the mail for everything within a few days.”
Kalish stated that Anvil refused to pay Ravenhorst because Ravenhorst had worked against Anvil’s interest by helping competing companies. This he said was in violation of a non-competition clause in the contract. Ravenhorst denied working against the company’s interest, and stated he was responsible for selling approximately 5,000 tons of fertilizer for the corporation during the contract period.
DID THE WRITTEN RELEASE EXTINGUISH ANY DEBT ANVIL OWED RAVENHORST FOR SERVICES RENDERED PRIOR TO THE INSTRUMENT’S EXECUTION? Anvil’s argument here as appellant is that its former employee, plaintiff Ravenhorst, forfeited any rights under the contract when he signed the cancellation and release instrument which Anvil contends was clear and unambiguous, and that any rights Ravenhorst had under the consultant type contract ended by his execution of the document. Anvil relies upon the general rule that where a contract is rescinded by agreement while in the course of performance, any claim in respect of performance, or of what has been paid and received thereon, will ordinarily be referred to the agreement of rescission and in general no such claim can be made unless expressly or impliedly reserved in the rescission contract. 17 Am.Jur.2d Contracts § 517 (1964).
Ravenhorst argues that the “Cancellation and Release” document did not forfeit his right to sue for the commissions accrued prior to the date of the execution of the *144 document. He says that the language of the cancellation instrument is ambiguous and subject to interpretation and therefore the issue was properly submitted to the jury for resolution. He cites Hadad v. Booth, 225 Miss. 63, 82 So.2d 639 (1955) for the general rule that it is the duty of the jury to determine the agreement of the parties when there is uncertainty in a written contract because of ambiguity or doubtfulness. Ravenhorst asserts the contract is ambiguous or silent as to accrued commissions, and therefore the trial court correctly allowed him and his son to give parol evidence as to the intent of the parties at the time of the execution of the release in order to assist the jury in making its decision.
No cases directly in point are cited by the litigants but we have decided a case having similarities, Southern Ry. Co. v. Anderson & Fuller, 158 Miss. 543, 130 So. 743 (1930). In writing our decision there, Justice Anderson stated the issue as follows:
Where the parties to a written contract subsequently agreed that the contract be cancelled and terminated, to take effect on a past date, does such agreement have the effect of extinguishing the rights and obligations arising under the cancelled contract prior to the effective date of the cancellation?
Id. at 547, 130 So. at 744.
In that case, the parties entered into a written three-year lease on June 10, 1925, for steel rails. On July 27, 1925, another lease was signed with identical provisions except that the tonnage was lowered. Each lease stated that the appellee would pay taxes on the leased property. On December 21, 1926, the parties signed a contract can-celling both leases, to take effect as of July 31, 1926. When the appellee failed to pay the taxes for the property for the year beginning October 1, 1925, the appellant brought suit. The appellee defended by claiming that the cancelling contract terminated his obligation to pay the taxes. Our opinion in Southern Ry. Co., supra, set forth the general rule that when the contract is rescinded by mutual agreement, the parties are restored to their original rights and cannot bring an action for breach. In writing the opinion, Judge Anderson was careful to note that this principle had no application where the cancelling contract expressly “or by necessary implication” preserved the rights and obligations under the original contract. The appellant argued that the final language in the cancelling contract which stated that the agreement would be effective July 31, 1926, had the effect of preserving the rights under the contract since the cancelling contract was signed December 21, 1926.
This Court agreed that the contract language had such an effect.
What did the parties mean by making the effective date of the cancelling contract July 31, 1926? It must not be treated as meaningless — mere idle, futile language. It would have been easy for the parties merely to have canceled the lease contracts, leaving the effective date as of the date of the canceling contract. If the word “cancelled” had been used, and no more, that would have been the effect. But they did not do that; they went further, and used the phrase “to take effect as of the 31st day of July, 1926.”
Id. at 548, 130 So. at 744.
The Court quoted with approval the New York decision in Roe v. Conway, 74 N.Y. 201 (1878), wherein that court stated:
The cancellation and surrender was not absolute but qualified and restricted by its terms, and the correct interpretation of the language employed is, that prior to the time named the covenants and conditions of the lease should remain in force. The taxes which remained unpaid as well as other obligations of the lessees were not affected thereby and as to these the liability of the defendants remained the same as if no such instrument had been executed. . . . The agreement that the lease was “canceled and surrendered as of the 1st of April, 1875,” did not mean that it was annihilated and destroyed absolutely but that it continued' in force as to all obligations which existed at the time named. It was a reservation of any liability which had been incurred prior to *145 that time and not a discharge of the same.
Id. 158 Miss. at 549, 130 So. at 745.
On this basis it was concluded in Southern Ry. Co., supra, that any obligations arising prior to the effective date of the cancellation, July 31, 1926, were not extinguished.
Does the instrument before us entitled “Cancellation and Release of Contract” contain an implied or express reservation in the contract of Ravenhorst’s intent to reserve a claim for accrued commissions? A reading of the plain language of the instrument shows no express reservation of such intent; neither does it show any implied reservation of rights. Instead of showing any implied reservation of rights, the cancellation instrument before us states on its face that it is to be effective May 23, 1977, the date when the parties signed and executed the instrument. Writing for the Court in Southern Ry. Co., supra, Judge Anderson spoke to a case like the instant case when he said that no rights would be preserved if the parties cancelled their prior contract leaving the effective date as the date of the cancelling contract — he used the language “if the word ‘canceled’ had been used, and no more, that would have been the effect.” Id. at 548, 130 So. at 744.
The contract reveals that Ravenhorst did nothing either expressly or impliedly to reserve his right to the commissions. Raven-horst, according to the record, is an experienced, intelligent and successful businessman, and was not shown to be under duress or any disability when he voluntarily executed the rescission instrument. His suit charged “fraud and misrepresentation” on the part of Anvil; however, the lower court found in favor of Anvil on the fraud aspect from which Ravenhorst did not appeal. Ra-venhorst requested Anvil to release him (from their prior contract) which Anvil did in clear and unambiguous language set forth in the rescission instrument which upon this record is not subject to variation by parol evidence. Accordingly, Raven-horst cannot escape the clearly expressed terms of his own solemn act: his joinder in the rescission instrument dated May 23, 1977. In 15 Williston on Contracts § 1827 (3d ed. 1972), the following is stated concerning the rescission of bilateral contracts:
Where at the time of rescission of a bilateral contract it has been partly performed on one or both sides, the parties may agree simply tó forgo further performance and let past matters stand where they are, or they may agree not only to forgo future performance but also to make restitution by returning payments already made or paying for other performance which has been rendered.
Which of these contracts the parties in a particular case have made can depend on no rule of law, but on a determination of what the terms of their contract in fact were; and if that contract, while providing for cessation of further performance, does not provide for the return of past payments or compensation for past performance, there can be no recovery of such payments or compensation, for the burden of proving any right is on one who asserts it, nor may prior breaches of the original contract be redressed. (Emphasis added).
Having concluded that the “cancellation” instrument before us contains no express or implied reservation to commissions on the part of Ravenhorst when he signed the instrument, he forfeited or surrendered any right to recover such alleged commissions. Therefore, no jury case existed and the trial court should have granted Anvil’s requested peremptory instruction. Reversal is accordingly required.
REVERSED AND RENDERED.
PATTERSON, C. J., SMITH, and ROBERTSON, P. JJ., and SUGG, WALKER, LEE and HAWKINS, JJ., concur.
BOWLING, J., takes no part.